EMMA ALTGELT, EXECUTRIX, v. DANIEL BRISTER.

(Case No. 4610.)

1. CHARGE OF COURT.— A charge which makes the controlling issue in the case one to which no evidence had been adduced, is erroneous.
2. SAME — ON WEIGHT OF EVIDENCE.— So also is a charge which is so framed that the jury might have inferred from it the opinion of the court on a material issue of fact, as to which there was conflicting evidence.
3. SUIT AGAINST AN EXECUTRIX — EVIDENCE — STATUTE CONSTRUED — TRANSACTION WITH DECEASED.— A party suing an executrix should not be permitted to testify that he entrusted money to the deceased to be loaned, for this would be evidence as to a transaction with deceased, within the meaning of the statute.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

On June 6, 1879, Brister instituted this suit against appellant as executrix of the last will and testament of Ernest Altgelt, deceased, to recover the sum of $1,200 and interest, the amount claimed to be an over-charge by Altgelt against Brister, on a certain house and lots on North street, in the city of San Antonio, purchased for him by Altgelt from D. Y. Portis; and that the over-charge was concealed from him by Altgelt, etc.

Appellant answered, denying the allegations of the petition; also that Brister had ratified and approved the purchase; that Brister

had placed with Portis a large sum of money to be loaned at interest and on security, and that Portis had used for his own purposes $2,800 of the same, and was insolvent; that Altgelt and Portis were partners in the practice of the law; that after they had dissolved, Altgelt procured Portis to convey the land to Grothaus, and Grothaus to Brister, in payment of the $2,800; that this property was the only property Portis owned at the time, and that it was his homestead; that all of this was done with the knowledge and consent of Brister; that Altgelt was not liable for the money used by Portis, but that if he was, then Portis was a necessary party to the suit, etc. Also, that the matter had been fully settled between Altgelt and the agents of Brister. He also pleaded two years' limitation.

March 19, 1881, the cause was tried and resulted in a verdict and judgment for Brister for $400, with legal interest from the 1st day of May, 1876. From this judgment Mrs. Altgelt appealed.

So much of the evidence, not stated in the opinion, as is material to a proper understanding of the questions passed on, will be found correctly given in the brief of appellant, as reported.

*Waelder & Upson,* for appellant.

I. The court erred in permitting the plaintiff to testify in his own behalf, over the objections of the defendant, as to transactions had with her testator. The plaintiff was permitted to read from his own deposition that he never heard anything about the matter after his first visit for a long time; that he did not know that the house was his until January, 1878; that he knew nothing about the deeds in June, 1876; that the firm of Altgelt & Portis had his business; that he placed his money with them to be loaned on security. R. S., art. 2248.

II. The court erred in giving the first section of the special charge asked by plaintiff, because the said charge is not applicable to the issue made by the pleadings of the parties, not applicable to the evidence adduced, and because said charge is upon the weight of evidence.

III. The charge complained of in this assignment is improper as being upon the weight of evidence, in assuming that the house and lots were worth $2,000, while $2,800 was charged to plaintiff; the evidence as to value being conflicting.

The witness D. Y. Portis says: "The property was then my homestead, and was worth $3,500; it had cost me $3,750 a few years before; since that property had generally depreciated some.

I preferred to give up the property even for $2,800 to owing Brister money."

F. E. Grothaus: "I offered Altgelt $2,700 for the North street property a short time before the deeds were made, and would have taken it at that figure. Portis held it at $3,000." . . . "I wished to buy as cheap as possible, and considered that the property was well worth $2,700 at that time."

W. H. Young: "The property was worth in June, 1876, $3,000." . . . "I loaned Brister $1,500 on the property in January, 1878, and considered the property well worth $3,000."

L. C. Grothaus: "My brother and myself, just previous to the conveyance, offered Portis $2,700, which Portis refused. I considered the property worth that or more, though I would not give more for it."

For the years 1877 and 1878 the property was assessed for taxes to Brister at $2,500.

James L. Trueheart, F. L. Paschal and Edward Miles examined the property during the trial, and then considered it worth $1,800 to $2,000 in June, 1876.

IV. The charge complained of was further objectionable as it indicated to the jury the opinion of the court on that branch of the case. Andrews v. Marshall, 26 Tex., 215.

*Tarleton & Boone,* for appellee.— Article 2248 of the Revised Statutes only prohibits testimony as to transactions with and statements by the testator, intestate or ward, etc., and cannot be so extended by implication or otherwise as to prevent a party to a suit from testifying in his own behalf as to other matters than those inhibited by the statute.

The court below ruled out all the testimony of Daniel Brister, which in any manner could have been properly excluded under the terms of the statute.

As to the balance of matters and points raised and referred to by appellant in the case, we submit that the record will show that the testimony in the case was conflicting, and the jury having passed upon that, we apprehend that this court will not disturb their finding; and we therefore respectfully submit that the judgment of the court below ought to be affirmed.

WATTS, J. COM. APP.— Appellee's case, as made by the petition, is that Altgelt was his agent and attorney, and in that capacity controlled large sums of money belonging to appellee. That on the

16th day of June, 1876, Altgelt, after having been duly informed by appellee that he would pay $1,600, and no more, for a certain house and lots situated on North street, in the city of San Antonio, then belonging to D. Y. Portis,— Altgelt, without the knowledge or consent of appellee, and for the purpose of defrauding him, purchased from Portis the house and lots, and procured the same to be conveyed to appellee through F. E. Grothaus, and charged appellee with the sum of $2,800 therefor; charging that the fraud was concealed from him, and that the property was only worth $1,600 at that time.

The evidence showed that Portis & Altgelt were partners in the practice of the law and had been for several years; that appellee and Portis were old friends, and had known each other for a long time, and that appellee was then unacquainted with Altgelt; that he entrusted large sums of money to Portis to be loaned at interest, and that Portis had used $2,800 of this money; that all the property Portis then owned was the house and two lots on North street; that Altgelt had in connection with Portis taken charge and management of the business of appellee, that is, to the extent of loaning appellee's money. Just prior to June 16, 1876, Portis & Altgelt dissolved their copartnership, but still continued to manage appellee's business in conjunction.

Altgelt procured the conveyance to the North street property to be made from Portis to Grothaus, and from Grothaus to appellee, in payment of the $2,800, the amount of appellee's money that had been used by Portis. The record is silent as to whether Altgelt, in any way, had any connection with the appellee's money prior to the time Portis had used for his own purposes the $2,800. Upon this state of case the court charged the jury as follows: .

"You are instructed that if you believe, from the evidence, that Ernest Altgelt was the attorney and agent of plaintiff in June, 1876, and as such purchased for Daniel Brister, or caused to be purchased, the house and lots on North street, without the knowledge or consent of said Brister, and paid therefor out of Brister's money in his hands, then you are instructed that Brister could not be charged beyond a reasonable price therefor. And if you believe, from the evidence, that the property in question, upon the date of its transfer to Brister, was not reasonably worth more than $2,000, while it was charged to Brister at $2,800, then you are instructed that the plaintiff is entitled to recover the difference between the actual value of the property and the price paid for him."

That charge is objectionable, for that the evidence clearly and

unmistakably shows that Altgelt did not purchase the property and pay for it out of appellee's money, which was in his hands as agent and attorney; but that he took it from Portis for appellee in payment of the $2,800 which Portis had used of the money of appellee. In other words, the court by the charge submits to the jury an issue not made by the evidence — an issue to which there was no evidence adduced.

The facts and circumstances might exist that would have rendered Altgelt jointly liable for the $2,800 used by Portis, and in that event, if he accepted the house and lots for appellee in payment of that sum, without the knowledge or consent of appellee, when in fact the actual value of the property was less than that amount, then Altgelt might be liable to appellee for the difference. But if Altgelt was not jointly liable with Portis for the amount of money used by the latter, and Portis was insolvent, and had no other means out of which to pay appellee except the lots and house on North street, which was then the homestead of Portis, we are unable to perceive, in the light of the evidence disclosed by the record, how the appellee was injured by the action of Altgelt in this particular. If it had been made to appear that Portis had since that time accumulated effects out of which the debt could have been made, then, perhaps, Altgelt might have become liable, as he had accepted the conveyance of the property in satisfaction of the claim.

However this might be, it is certain that Altgelt did not purchase this property and pay for it with the money of appellee then in his hands. And in submitting that issue the court went outside of the case as made by the evidence, and made the controlling issue in the case one to which there had been no evidence adduced.

This charge is also objectionable, in view of the evidence found in the record, in that the court thereby impliedly assumes that the true value of the property at the time of the conveyance was not more than $2,000. At least from the language in which the latter portion of this charge is couched, the jury might have assumed that the opinion of the court was that the real value of the property was $2,000. Andrews v. Marshall, 26 Tex., 215.

Our statute provides that, "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party," etc. R. S., art. 2248.

In this case appellee was by the court permitted to testify, over the objections of appellant, that Altgelt & Portis had charge of his business, and that he had entrusted to them his money to be loaned on security, etc.

Certainly the entrusting money with the deceased to have it loaned by him on security, constituted a transaction with the deceased, within the meaning of the above-quoted article. The rule is axiomatic, that where there has been a full, final and complete settlement had between parties as to particular matters, that such settlement is conclusive unless it be shown that it resulted from fraud, inadvertence or mistake. And the rule is the same whether the settlement be made by the parties in person or through their lawfully authorized agents. If, as claimed, there was a final settlement of this matter had between Altgelt for himself, and Portis and Robinson as the agents of appellee, duly authorized to act for him in that matter, then such settlement would conclude appellee unless he should aver and prove to the satisfaction of the jury that it was the result of fraud, inadvertence or mistake; otherwise the settlement could not be reopened, and the matters therein determined again adjusted.

We conclude that the court erred in the particulars indicated, and that the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Transferred to Tyler, and opinion rendered October 30, 1882.]