THE PULLMAN PALACE CAR COMPANY v. D. R. FOWLER.

No. 239.

1. **Abatement — Cause of Action Merged into Judgment — Parties.**—In an action against appellant by appellee, who was a passenger suffering from rheumatism upon one of appellant's sleeping cars, for damages for its refusal to prepare and allow him to occupy his berth as a bed in the daytime, judgment was rendered in favor of appellee for $1500 in the court below. An appeal was perfected by appellant, and afterward appellee died. Upon appellant's motion that the suit be abated on the ground that the cause of action is not one which survives, and upon motion of counsel for appellee that the heirs of appellee be allowed to make themselves parties, *Held*, under article 1044. Revised Statutes, it is clear that the judgment stands now as the cause of action, and until set aside the motion to abate can not be maintained; and new parties are not necessary or proper in this court.

2. **Measure of Damages—Mental Suffering.**—In the absence of evidence of mental suffering, it was error for the court to charge the jury, that if they found for the plaintiff (appellee), in estimating the damages to take into consideration the mental suffering plaintiff sustained.

3. **Same—Charge.**—It was claimed by appellee that in the contract made with the company he had a right to use the berth as a bed to lie upon for the whole trip. Appellant claimed that the purchase of one berth did not allow him the use of the same as a lengthwise bed in the daytime. *Held*, if it be conceded that appellee was right in his interpretation of the contract, and is entitled to damages, the measure thereof is such only as directly and naturally flow from a breach of the contract, and such as were reasonably within the contemplation of the parties. In the absence of any harsh or unkind treatment, or even of injury inflicted, it could not be said that the parties reasonably contemplated mental suffering for the breach of such a contract, or that such mental pain or suffering

would flow naturally from such breach, and in the absence of testimony upon this issue it was error for the court to charge upon it.

ON MOTION FOR REHEARING.

4. **Same — Excessive Verdict.** — Additional conclusions of fact and law are found, and it is held, that in the event appellee is entitled to recover thereunder, the verdict and judgment are, in the opinion of a majority of the court, excessive to the amount of $1150, and that the charge of the court below in submitting to the jury mental suffering as an element of damages when there was no evidence showing any mental anguish or suffering, was erroneous, and that for this reason the judgment should be reversed and the cause remanded.

Appeal from Wood.    Tried below before Hon. F. J. McCord.

*Percy Roberts* and *McCormick & Spence*, for appellant.—1. In actions for personal injuries, where no exemplary damages are alleged, the jury should only return a verdict for such sum as will reasonably compensate the plaintiff for the injuries sustained; and where the jury disregard this rule, and return a verdict which is manifestly excessive under the proof, this fact indicates that the jury were actuated by passion, prejudice, or partiality, and the court should, when requested so to do, award a new trial.   Railway v. Randall, 50 Texas, 254; Railway v. Ford, 53 Texas, 364; Goodno v. Oshkosh, 28 Wis., 300; Spicer v. Railway, 32 Wis., 524; Duffy v. Railway, 34 Wis., 189; Railway v. Hand, 7 Kans., 380.

2. In actions for personal injuries, to warrant the finding of damages because of mental suffering, the proof must show that in addition to the physical pain, the wrongs complained of were attended by circumstances of insult, or the injury must be such as would cause in the mind of the plaintiff a reasonable apprehension of disfigurement of the person or other serious bodily harm.   Fenelon v. Butts, 53 Wis., 344; Furguson v. Davis County, 57 Iowa, 601; Smith v. Holcombe, 99 Mass., 552; Ford v. Jones, 62 Barb., 484; Smith v. Railway, 23 Ohio St., 10; McMahon v. Railway, 39 Md., 438; Trigg v. Railway, 74 Mo., 147.

*B. R. Hart*, for appellee.—1. In actions for personal injuries, a large amount of discretion should be left to the jury in estimating damages; and it is only when the damages are palpably and manifestly excessive that the verdict should be set aside; and the court will not reverse, even if the damages allowed are much greater than the court would have given under the proof.   Railway v. McNamara, 59 Texas, 259; Railway v. Randall, 50 Texas, 254; Railway v. Berg, 50 Wis., 419.

2. In actions for personal injuries, where the physical pain is produced or continued in such manner as to create anger or irritation of the mind of the person injured, damages for mental suffering should be sustained. Railway v. Levy, 59 Texas, 568.

3. Mental suffering necessarily follows all personal injuries producing physical pain, the extent of which may be great or small, according to the circumstances of the particular case; and the question should be submitted to the jury in the charge of the court wherever the proof shows personal injuries inflicted.  Railway v. Levy, 59 Texas, 568.

*B. R. Hart* and *H. G. Robertson*, for appellee's motion for rehearing, cited: Railway v. Curry, 64 Texas, 85; Smith v. Railway, 23 Ohio St., 19; 1 Sedg. on Dam., 8 ed., 66; Ferguson v. Davis, 57 Iowa, 609.

LIGHTFOOT, CHIEF JUSTICE.—The following statement of the case by appellant is concurred in by appellee, and is adopted:

"This suit was instituted on March 28, 1891, by D. R. Fowler against the Pullman Palace Car Company. As his cause of action, appellee alleged substantially as follows: That appellant was on the 1st day of August, 1890, engaged in providing and furnishing sleeping cars attached to passenger cars on the various railroads in the States of Texas and Arkansas, embracing the Texas & Pacific Railway from Texarkana, Texas, to Abilene, Texas; and the St. Louis, Iron Mountain & Southern Railway from Malvern, Arkansas, to Texarkana, Texas, for the use and benefit of passengers and travellers upon said railways, for hire; that said company (appellant) provided berths in said sleeping cars, in which passengers could go to bed and sleep upon paying the fare or charges for same; that on said 1st day of August, 1890, appellee was afflicted with rheumatism in his legs, shoulders, arms, and hips, from which he was suffering great physical and mental pain, scarcely able to get about, and then only with crutches; that he was at Malvern, a town in the State of Arkansas, situated on the St. Louis, Iron Mountain & Southern Railway, on said 1st day of August, 1890, and purchased of appellant's agent there, the conductor on the sleeping car, a ticket for a berth to sleep in, in its sleeping car, from the town of Malvern, Arkansas, to Abilene, Texas, for which he paid the sum of $4. That by the terms of said ticket appellee was authorized and entitled to the occupancy of said berth in said sleeping car from Malvern, Arkansas, to Abilene, Texas; that at the time appellee purchased said sleeping car ticket, he informed the agent from whom he purchased the same, and before he purchased it, that he would be compelled to occupy said berth until he arrived at his home in Abilene, as he was suffering great pain and could not sit up, to which said agent replied that he could have the berth and occupy it until he reached his home in Abilene, and upon the payment of $4 said agent delivered appellee the ticket.

"That appellee entered appellant's sleeping car at Malvern on August 1, 1890, and soon after the train pulled out his berth was prepared for him to go to bed, which he did, and rested tolerably well until the train

arrived at Mineola, Wood County, Texas, at which place the conductor
on said sleeping car in charge of same woke up appellee and ordered
him to get out, which appellee was about to do, and made an effort to do
so, which gave him great pain, but finding he had only reached Mineola,
Texas, refused to get out, as he had purchased a ticket to Abilene, and
so informed the conductor.   Appellee was then permitted to occupy said
berth until he reached Fort Worth, Texas.   There he arose from his
berth, and put on a part of his clothing in order to get a cup of coffee,
and returned to lie down on his berth; the porter was taking it up, and
refused to let him lie down upon it, or arrange in any way for him to
rest.   The porter then called to the conductor in charge of said car and
asked him what to do.   Appellee then and there informed the conductor
that he had purchased a berth to Abilene, and explained to him the agree-
ment with the agent who sold him the berth and ticket, but said conduc-
tor refused to let him occupy said berth any longer, and had the same
made up or taken up.   Appellee requested the conductor to arrange or
allow the seats to be so arranged, and a pillow given him, that he might
rest to some extent from suffering, but the conductor refused that, and
told appellee that he could only occupy a seat just like other passengers
who were stout and hearty; that thereupon appellee took a seat as he was
compelled to do by said conductor.

"That by reason of having to sit up and without anything to rest his·
legs upon, after said train left Fort Worth going west, appellee suffered
such great pain, both physical and mental, that he became so sick that he
vomited copiously, and yet said conductor refused to arrange any way
for him to rest, although he saw and knew appellee was suffering very
severely from pain and sickness.   That after said train had run more than
100 miles west of Fort Worth, and the conductor saw how excruciating
the pain and suffering was with appellee, he had the porter fix a seat and
pillow for appellee, so that he could rest his legs upon it.   That for more
than six hours after the said train left Fort Worth appellee suffered the
most excruciating pain from his said rheumatism on account of said con-
ductor's refusing to allow him to accupy said berth to Abilene, and re-
fusing to arrange any way for his comfort and ease, which could easily
have been done.   That said sleeping car had less than a dozen passengers
in it from Fort Worth to Abilene, which was a distance 160 miles; that
said car had a capacity of more than a dozen lower berths in it; that ap-
pellee could have occupied said berth to Abilene without any inconven-
ience to any one; that appellee, at the time suit was filed, was still
suffering from said rheumatism, and that the same was seriously aggra-
vated by the wrongs alleged against appellant."

Appellee laid his damages at $2000, and prayed for judgment for said
sum.   Appellant filed its original answer on April 21, 1891, and its first
amended original answer on November 27, 1891, consisting of (1) gen-

·eral demurrer, (2) general denial, and (3) a special answer, alleging that if the conductor of appellant, as its agent, made any contract with appellee whereby said agent agreed with appellee that appellee should occupy in appellant's sleeping car more space than at the rate fixed by appellant appellee paid for, then said contract was not binding on appellant, because the said agreement for said additional space was without consideration and was a nudum pactum, and because said conductor was not authorized to make such contract for appellant, and the making of such contract was not within the apparent scope of said agent's authority.

The case was tried on November 27, 1891, before the court and jury, and the trial resulted in a verdict for appellee for $1500, upon which judgment was rendered for said sum against appellant.

After the appeal to this court, appellant filed a motion under oath, stating that since the appeal was perfected the appellee died, and that the cause of action not being one which survives, asking that the suit be abated. Appellee's counsel moved that the heirs of appellee be allowed to make themselves parties, and these two motions were submitted with the cause.

Article 1044, Revised Statutes, provides, that after appeal the death of a party to the record shall not abate the cause, "but the court shall proceed to adjudicate such cause and render judgment therein as if all parties thereto were still living, and such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto; provided, however, that this act shall not apply to any suit or action in which the cause of action does not survive in favor of or against the legal representatives of a deceased person."

This section of the statute was under discussion in the case of Brooke v. Clark, 57 Texas, 109, and the court said: "In the recent case of Galveston City Railway Company v. Nolan, 53 Texas, 139, the conflicting decisions of this court upon this question were reviewed, and that of Gibbs v. Belcher, 30 Texas, 79, approved, to the effect that the original cause of action was merged into the judgment of the District Court in favor of a plaintiff, and that such judgment was not vacated or opened by writ of error or appeal, but remained valid and subsisting until set aside, and constituted in favor of the legal representatives the cause of action."

In this case it is clear that the judgment stands now as the cause of action, and until set aside a motion to abate can not be maintained; and new parties are not necessary or proper in this court. The motion of appellant to abate the suit, and the motion of appellee to make new parties, are overruled.

The fifth assigned error is as follows: "The court erred in the following paragraph of its charge to the jury, viz., 'If you find for plaintiff, in estimating damage plaintiff will be entitled to, you will take into consid-

eration the pains and mental suffering plaintiff sustained that were the direct and proximate result of defendant's failure to furnish plaintiff with a bed;' because there is no testimony in the case to authorize a recovery by plaintiff for mental suffering in any event.''

The testimony of appellee (the only witness for that side) was substantially as follows: ''In August, 1890, he lived in Abilene, Texas, and was afflicted with rheumatism in his legs, shoulders, and feet, but mostly in his legs, and especially in his knees; that he had to use crutches in walking, and could not get about without them; that he went to Hot Springs, in Arkansas, for his health, and remained there until sometime about the middle of August, 1890; that he returned to his home in Abilene, Texas, coming by way of Malvern, Arkansas, where he entered the sleeping car of defendant, the Pullman Palace Car Company, on the Iron Mountain Railway; that just as he was about to enter said car he made a misstep with his crutch on the platform. He was assisted in the defendant company's sleeping car by some one he did not know, but thought it was an employe of the defendant company, and shortly after he got into the car and took his seat, the conductor of the defendant company on the car came to him, and he told the conductor that he was suffering with rheumatism, and he could not sit up but must lie down. * * * He asked the porter [at Fort Worth the next day] to make down his bed, informing him that witness (plaintiff) was not able to sit up. The porter refused to make down his bed, but called the conductor of defendant company in and asked him what to do. The conductor told witness that he could not have the berth to lie on any further. Witness then requested him to spread out the seats and give him a pillow, and that he could make himself comfortable and easy by lying down upon it and putting his knees as high, or in a horizontal position with his body. This the conductor refused to do, telling witness that he would take up too much room, and that other passengers might want seats in the car, but the conductor did extend the seats in the car about three inches out, but not enough to do any good, and witness had to sit with his feet extended down to the floor until he reached Abilene, Texas, which was about eight hours, the distance being 160 miles from Fort Worth; that during said hours he suffered most excruciating pains from his rheumatism on account of having no place to rest his legs and knees; that the pain was so severe he became sick at the stomach before he reached Abiline, Texas. * * * That the plaintiff is a practicing physician, and when the knee and foot were hanging down perpendicular from the body there was an overflow of blood to those parts and made the pain so severe, and if these limbs could be placed in a horizontal position with the body or elevated, that the blood would flow from the afflicted parts, and lessen the pain or give ease to the sufferer. * * * The reason I suffered more from rheumatism than I would have suffered had the bed been

made down, was because of the obstruction of the circulation in my leg and foot by not having my leg in a horizontal position. The blood circulates more freely in the leg when the same is in a horizontal position than it does when the leg is in a perpendicular position. After the seat was partially pulled out, at Fort Worth, I do not remember to have made any further complaint to the conductor.''

There was no evidence whatever of mental suffering. There was no evidence of harsh treatment, or anything beyond a kind and considerate course by the employes of appellant. The testimony of appellant's conductor was about as follows: That he sold plaintiff one lower berth from Malvern, Arkansas, to Abilene, Texas, at $4, which gave the purchaser the right to use one-half the section as a lengthwise bed at night, and a double seat or crosswise bed in the daytime; that the use of one berth at night and a lengthwise bed in the daytime would have been $6. He said:

'' The next morning after breakfast, at Fort Worth, the plaintiff asked me if his berth could be made down as a bed, as he was suffering some pain from rheumatism. I told him that I could have his berth made down, but if I did, he would have to pay for the use of the whole section. I explained the reason why, showing him that the bed would take up the whole section and prevent me from selling one-half of the section to another passenger. I further explained to him that if I were to do what he wanted me to do, the whole section would have to show upon the diagram, and I would have to pay for one-half of the section myself, or I would lose my position. It is a standing rule and order of all the conductors, that all the space used by passengers in the sleeping car must appear on the diagram, and the price of same accounted for by the conductor. Had I made down Mr. Fowler's berth as a bed that day, and turned in only the $4, the price of a single berth, I would have been dismissed from the defendant's service. When I told Mr. Fowler that he could not have his berth made down as a bed without his paying additionally therefor, and explained to him the reason, he replied that he could not afford to pay for the whole section, and claimed that he had a right to use his berth as a seat or as a bed as he might see proper. I told him that I would do the best I could for his benefit, and that was to have his seat pulled out so that he could lie down in a comfortable position, and this I did. His seat was pulled out by the porter and under my direction, and I heard no further complaint from Mr. Fowler after that. I have no interest in the result of this suit. The plaintiff offered me no reward or inducement or money to allow him to use his berth all the time as a bed.''

If a recovery can be had in cases of this character for mental suffering, then we can not see why such damages are not recoverable in any other case of breach of contract. The cases in which such damages have been allowed have involved some element of harsh treatment or insult or fright, or apprehension, grief, or mental pain of some character. Mere physical

suffering alone would not justify a recovery for mental suffering, and the jury should not have considered it. It is only such damages as are the direct, natural, and proximate results of the breach of the contract which can be considered. It was claimed by appellee, that under the contract made with the company he had the right to use the berth as a bed to lie upon from Malvern to Abilene, and that the company violated its contract in not allowing him to do so. On the other hand, it was claimed by the company, that the purchaser of one berth did not allow him the use of the same as a lengthwise bed in the daytime. Here was a direct issue as to what was the contract. If it be conceded that appellee was right in his interpretation of the contract and is entitled to damages, what is the measure of such damages? Clearly such only as directly and naturally flow from the breach of the contract, and such as were reasonably within the contemplation of the parties. In the absence of any harsh or unkind treatment, or even of injury inflicted, could it be said that the parties reasonably contemplated mental suffering for the breach of such a contract, or that such mental pain and suffering would flow naturally from such a breach? We think not.

Appellee's suffering, as he testified, was caused from the rheumatism, which had been aggravated by a fall at Malvern just before entering the appellant's car. This suffering, he claims, would have been greatly lessened if he could have laid his legs in a horizontal position; but he did not testify to any mental agony or pain by reason of his physical suffering. In the absence of testimony upon this issue, it was error for the court to charge upon it. Altgelt v. Brister, 57 Texas, 432; Currie v. Gunter, 77 Texas, 490.

There are other questions in the case which will not be likely to arise on another trial, and which it is not necessary for us to pass upon.

For the error in the charge, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 21, 1894.

ON MOTION FOR REHEARING.

LIGHTFOOT, CHIEF JUSTICE.—At the special instance of appellee's counsel, in addition to the findings in our opinion, we find our further conclusions of law and fact, as follows:

In August, 1890, appellee was afflicted with rheumatism, and had been to Hot Springs, Arkansas. He returned to his home at Abilene, Texas, about the middle of August. While on the platform at Malvern, Arkansas, on the evening of his departure, and as he was about to enter the car, he fell and hurt himself, and was assisted on the sleeper of the Pullman Palace Car Company, where he bought a ticket on such sleeper from

the conductor for one lower berth from Malvern, Arkansas, to Abilene, Texas. Before buying the ticket he informed the conductor of appellant company that he was suffering with rheumatism, and would have to lie down, and wanted his berth for that purpose. His berth was made down about 9 o'clock at night, at the time other passengers had their berths fixed, and he occupied it until his arrival at Fort Worth, Texas, when he got out to get some coffee. While he was out, the berth in the sleeper was made up by the porter, and when appellee returned he remonstrated with the porter and with the conductor of appellant company, and claimed the right under the contract to have his berth made down as a bed until he arrived at Abilene. The conductor claimed that the contract only gave him the right to the berth as a bed at night, but that it was required by the company to be made up during the day and fixed for seats for passengers.

In the conflict of testimony on this point, we find from the verdict, and in deference thereto, that the appellee had an agreement with the conductor for his berth to be made down as a bed from Malvern, Arkansas, to Abilene, Texas, and that when the bed was made up during his absence, and the servants of appellant refused to replace it as a bed for appellee to lie upon, it was a violation of the contract. The conductor courteously explained to appellee his orders from the company upon the subject, and told appellee that the best thing he could do for him, under the circumstances, was to move the seats closer together. The seats were then moved about three inches closer together, and after this no further complaint was made to the conductor or other employes of appellant by appellee. During the remainder of the trip appellee suffered much physical pain from his rheumatism, and became sick and vomited by reason thereof; but there is no evidence of any mental suffering. That any one suffering from rheumatism in the legs will suffer much less if the legs can be kept on a level with the body than if the legs are hanging down, and there was testimony tending to show that appellee, by reason of not having his berth made down as a bed, had to ride with his feet and legs hanging down; but the testimony does not satisfactorily show why appellee, with the seats pulled out as above mentioned, was necessarily compelled to ride with his feet and legs hanging down.

Appellee was suffering from rheumatism, intensified by his fall on the platform at Malvern, Arkansas, when he boarded appellant's car. We find difficulty in determining from the evidence the extent to which his physical suffering was aggravated by reason of the refusal of the appellant to furnish him a berth made down as a bed, from Fort Worth to Abilene; and the testimony does not disclose whether or not his suffering and consequent damage could have been avoided or lessened by leaving the car and taking another, either at that time or a different time, when he could have procured a bed. By the rules of the company, the berths

were only made down as beds at night, unless a passenger should buy a ticket for a whole section; and appellee would have bought a ticket for a whole section if he could have thereby secured it made down as a bed, but we find from the verdict that this was not mentioned.

There was no evidence of any unkind or harsh treatment on the part of the servants of the company (appellant),but simply a disagreement between the parties as to the terms of the contract; and outside of a refusal on the part of the conductor to have the berth made down as a bed, the employes of appellant did what they could for the comfort of appellee.

We find that the verdict and judgment are excessive, and in the event appellee is entitled to recover, under the above findings, a majority of the court finds that the same is excessive to the amount of $1150.

*Conclusions of Law.*—1. We find that the charge of the court below was erroneous in submitting to the jury the question of mental suffering as an element of damage, as fully set out in our original opinion, as there was no testimony showing any mental anguish or suffering, and we think that the charge submitting the same to the jury was erroneous and misleading.   For this reason, we are of the opinion that the judgment should be reversed and the cause remanded.

2. In the event the Supreme Court should grant an application for writ of error, we have at the instance and on motion of appellee found our conclusion of facts, so that the same, if desired, may be considered by that court, if it should not agree with the views expressed in our opinion and the disposition made of the case.

The motion for rehearing is overruled.

*Motion overruled.*

Delivered May 9, 1894.